## BELL & als. v. SAWYER & al.

A general description of premises conveyed may be restricted and retrained by a particular description.

If there are conflicting descriptions in a deed which cannot be reconciled, that construction must be adopted which best comports with the intention of the parties and the circumstances of the case.

Prior to 1838, C occupied as his homestead a farm containing about two hundred acres, and in that year conveyed eighty acres of it to P, occupying the remaining one hundred and twenty acres as his homestead till 1841, when he removed from the farm and never returned. In October, 1841, he leased the one hundred and twenty acres to K, for three years. In 1843 P re-conveyed to him the eighty acres. Afterwards, in July, of the same year, C conveyed to B, by mortgage, "all the homestead farm where he formerly lived, and leased to K, or however otherwise described, containing one hundred and twenty acres, be the same more or less," and subsequently mortgaged to S the eighty acres — *held*, that the one hundred and twenty acres passed by the mortgage to B, and not the two hundred.

WRIT OF ENTRY, brought to recover a tract of land in Piermont, in this county.

The parties both claim as mortgagees of Tristram Cross, under different mortgages.

Plea, the general issue.

The mortgage under which the plaintiffs claim was given to the late Joseph Bell, Esquire, and is dated July 19, 1843, and recorded July 24, 1843. Under this mortgage the said Joseph Bell entered and occupied the demanded premises. The plaintiffs claim as heirs of Bell.

The description of the premises conveyed by the mortgage to Bell, is as follows :

" All the homestead farm where the said Cross formerly lived, in Piermont, in said county of Grafton, and leased to George Knapp, and purchased of David How and others by deed of September 28, 1832, recorded in Grafton registry, lib. 122, fol. 303 ; and by Ephraim Cross's deed to me of December 12, 1837, and recorded in Grafton registry, lib. 146, fol. 533, or however otherwise described, containing one hundred and twenty acres, be the same more or less."

The mortgage from Tristram Cross to the defendants, and under which they claim, is dated September 27, 1844, and recorded the same day, and the description of the premises conveyed by said mortgage is as follows:

"All that parcel of land conveyed to me by Huxham Paddock, by deed dated June 8, 1843, recorded in Grafton registry, lib. 175, fol. 22, reference being had to said deed."

Tristram Cross by his deed of August 23, 1838, conveyed to Huxham Paddock the demanded premises, and on the 8th day of June, 1843, Paddock reconveyed the same premises to Cross.

On the 11th day of October, 1841, Cross made a lease to one George Knapp, for the term of three years from the first day of January, 1842, which is the leasing referred to in the mortgage to Bell. The following is the description in said lease of the premises so leased:

"All that tract of land situated and being in the town of Piermont, in said county of Grafton, and constituting and composing the old homestead farm, as now owned by said Tristram Cross, and on which said Cross formerly lived, in said Piermont, and being the same farm now occupied by James Ladd, of said Piermont, excepting and reserving the two lower front rooms, on the east side of the new dwelling-house, in which said Cross lately lived, on said farm, and, also, the lower room on the north end of said house, and also all the chambers in said house, and excepting and reserving also the saw mill and shingle mill, and the dam and water privilege, and the yard and land appurtenant to, and used with said mill, with all the other privileges and appurtenances attached to said mills."

There was a cellar under the whole of said new house, which was not reserved in said lease.

It is agreed that the demanded premises, containing about eighty acres, and the farm and buildings thereon, as mentioned and described in said lease of Cross to George Knapp, were all described and included in the deeds of David How and others, and Ephraim Cross to said Tristram Cross, referred to in the mortgage of Tristram Cross to Joseph Bell, and were known

and occupied together by Tristram Cross until the 23d of August, 1838, (the date of his deed to Paddock,) as his homestead farm, or parts thereof. Said deeds of How and others, and Ephraim Cross, contained and conveyed to Tristram Cross other lands besides the lands before mentioned, (in all about two hundred and seventy-five acres,) but which were sold and disposed of by said Cross long before the date of either of said mortgages, under which the plaintiffs and defendants claim. Said land conveyed by Ephraim Cross to Tristram Cross, as aforesaid, contained five and one half acres, no part of which had been sold by Tristram at the date of either of said mortgages. Another portion of said lands, purchased by Cross of David How and others, contiguous to and adjoining the farm leased, as aforesaid, to Knapp, and including about eighty acres, being the westerly half of one hundred and sixty acre lot No. 36, was sold and conveyed by Cross to one John F. Stevens by two deeds, one dated December 16, 1836, and recorded December 19, 1836, conveying about fifty-six acres, and the other dated May 27, 1837, and recorded May 29, 1837, conveying the residue of said eighty acres. About twenty acres of the land conveyed to Stevens as aforesaid, and being on the side of said half lot next to, and adjoining said farm leased to Knapp, had been cleared, and was used by Cross, personally, as mowing, pasturing and tillage land, for several years before said conveyances to Stevens, and while Cross lived upon and carried on the land so leased to Knapp, and in connection therewith, there being no fence separating the same from said land so leased, and gathered the crops raised thereon into the same barns.

After the deed of Cross to Paddock, of the 23d of August, 1838, Cross never occupied the premises so deeded, but continued to occupy and live on the remainder of the farm until the spring of 1841, when he removed to Haverhill, and never afterwards lived on any part of said premises or farm. The farm leased to George Knapp included one hundred and twenty acres or more.

The question submitted to the court was, whether the de-

manded premises passed to Bell by said mortgage of Cross to him. And the parties agreed that if said premises did so pass, judgment should be rendered for the plaintiff; otherwise for the defendant.

*Chapman*, for the plaintiffs.

1. The intention of the parties is to be sought, and must be carried out in all deeds and instruments that are not absolutely void for want of certainty, or other cause.

2. When there is any ambiguity, uncertainty, or inconsistency in statements of particulars in description, material or otherwise, the construction must be against the grantor. *Worthington & als.* v. *Hyler*, 4 Mass. 205.

3. There is no doubt or uncertainty as to Cross's intention in the description of demandants' mortgage. The statements, " and leased to George Knapp, and purchased of How and others, and E. Cross," were not designed as parts of the description, and have no effect to limit, restrict, or enlarge a certain, clear and sufficient description which precedes, but are merely incidental circumstances, thrown in as general identity of the subject matter of the deed — being all the homestead farm in Piermont, where he formerly lived, however it might be described. *Hibbard* v. *Hurlburt*, 10 Vt. 173.

The description given is sufficient to ascertain the estate intended to be conveyed — " all the homestead," &c. — and if no other particulars had been mentioned, there could have been no doubt or question. 4 Mass. 205.

Suppose the clauses, " *and leased*," &c., " *and purchased*," &c., were in irreconcilable contradiction to the first leading, governing description of " all the homestead," &c., the first clause must prevail, and the latter become inoperative. 3 Ark. 18.

The defendants, to sustain their position, must completely pervert and contradict every material word in the description, which is clear, plain and distinct, and adequate and sufficient.

Their position would necessarily make it read thus: a part of the homestead which I have always owned since I purchased of

How and others, on which I lately or *last* lived, as my homestead, excepting the part sold to Paddock, instead of all the homestead where he formerly lived.

The language is clear and distinct, and fully expresses the intention to convey all the homestead farm.

If the parts " leased, &c., and purchased," &c., are held to be somewhat material, and mean what the defendants claim, they then are repugnant to the first leading description; and when two clauses in a description are repugnant, the latter is to be rejected. 3 Pick. 175 ; 4 Pick. 54 ; 3 Mass. 361.

But these clauses are not such as limit, restrict, enlarge, control or defeat a clear and sufficient description which is given in demandants' mortgage. 2 N. H. 175 ; 4 Mass. 205 ; 9 N. H. 126 ; 12 N. H. 135. These authorities sustain the demandants' positions, and to that extent do not conflict with the cases of *Tenney* v. *Beard,* 5 N. H. 58, and *Woodman* v. *Lane,* 7 N. H. 241.

*Felton,* for the defendants.

The demanded premises are not embraced in the mortgage under which the plaintiffs claim.

" The homestead farm where the said Cross formerly lived, in Piermont," varied in extent from time to time.

It was curtailed by the conveyance of Cross to John F. Stevens, in 1836 and 1837, and by the conveyance of the demanded premises to Huxham Paddock, in 1838.

The homestead farm where Cross last lived, in Piermont, is precisely what was leased to George Knapp, and constituted Cross's homestead farm from August 23, 1838, to the spring of 1841.

The general description as " the homestead farm," is defined by the subsequent part of the description.

The quantity (one hundred and twenty acres) included in said mortgage, corresponds exactly with the quantity leased to Knapp. If the demanded premises (eighty acres) were added, the quantity would be almost doubled. The addition would be equal to just two thirds of the one hundred and twenty acres.

The quantity is a material fact to guide in the construction of the deed. *White & a.* v. *Gay & a.*, 9 N. H. 126.

The first part of the description, "all the homestead farm," is not, as in *Woodman* v. *Lane*, and other similar cases, inconsistent with the rest of the description. See following authorities : *Woodman* v. *Lane*, 7 N. H. 241, and cases there commented upon ; *Tenney* v. *Beard*, 5 N. H. 58; *Conolly* v. *Vernon & Vyse*, 5 East 51, 80 and 81 ; *Barnard* v. *Martin*, 5 N. H. 536 ; *Clough* v. *Bowman*, 15 N. H. 504; *Corbin* v. *Healey*, 20 Pick. 514 ; 4 Kent's Com. 466 ; *Tyler* v. *Hammond*, 11 Pick. 133 ; *Low* v. *Hempstead*, 10 Conn. 23 ; *Smith* v. *Strong*, 14 Pick. 128 ; *King* v. *Little*, 1 Cushing 436 ; *Flagg* v. *Bean*, 5 Foster 49 ; *Webster* v. *Atkinson*, 4 N. H. 26.

The expression, "or however otherwise described," has no tendency to enlarge the premises previously described. *Tyler* v. *Hammond*, 11 Pick. 193, before cited.

That phrase has reference to the whole description taken together, and not to any detached part of it.

If the demanded premises are included in the mortgage to Bell, then all parts of the description are not satisfied, for upon that supposition the mortgaged premises were not all leased to Knapp. But leaving out the demanded premises, all parts are satisfied and consistent; that is to say, said mortgaged premises embrace all the homestead where Cross formerly (last) lived, in Piermont, were all included in the purchase made by Cross of How and others, and E. Cross, and were all leased to Knapp. *Low* v. *Hempstead*, 10 Conn. 29, 30, before cited ; Greenleaf's Cruise, title 32, chapter 20, § 6 and § 9, and note 3 to § 9.

EASTMAN, J. It is well settled, by repeated decisions in this State, that in a conveyance of land a general description of the premises conveyed may be restricted and restrained by a particular description. *Barnard* v. *Martin*, 5 N. H. 536 ; *Woodman* v. *Lane*, 7 N. H. 241 ; *Flagg* v. *Bean*, 5 Foster 49.

It is also a well known rule, that where conflicting descriptions cannot be reconciled, that construction must be adopted

which best comports with the manifest intention of the parties and the circumstances of the case. *Tenney* v. *Beard*, 5 N. H. 58 ; *White* v. *Gay*, 9 N. H. 126 ; *Loring* v. *Norton*, 8 Greenl. 61 ; *Clough* v. *Bowman*, 15 N. H. 504.

The description in the mortgage from Cross to Bell, under which the plaintiffs claim, is not altogether clear; and the question is, what construction shall be put upon it? Is the general description, " all the homestead farm where the said Cross formerly lived," in any way limited or explained by the subsequent phraseology which is used ?

Prior to August, 1838, Cross, the mortgager, under whom both parties claim, owned all the premises described in both mortgages, and occupied them as his homestead farm, the whole containing two hundred acres or more.

In August, 1838, he sold about eighty acres of the farm to Paddock, and occupied the balance as his homestead till the spring of 1841, when he removed to Haverhill, and has not lived upon the farm since.

In October, 1841, he leased what he then owned to Knapp, containing one hundred and twenty acres, or more, for three years from the first of January, 1842.

In June, 1843, Paddock reconveyed to Cross the eighty acres.

After these transactions, Cross gave the mortgage to Bell, in July, 1843, and described the property mortgaged as follows : " All the homestead farm where the said Cross formerly lived, in Piermont, in said county of Grafton, and leased to George Knapp, and purchased of David How and others by deed of September 28, 1832, recorded in Grafton registry, lib. 122, fol. 303 ; and by Ephraim Cross's deed to me of December 12, 1837, and recorded in Grafton registry, lib. 146, fol. 533, or however otherwise described, containing one hundred and twenty acres, be the same more or less."

In September, 1844, Cross mortgaged the eighty acres to the defendants, describing the land as that which Paddock had conveyed to him in 1843.

It is for the recovery of these eighty acres that this suit was brought; the plaintiffs contending that this tract was included in and covered by the mortgage to Bell, as well as what was leased to Knapp, while the defendants contend that these eighty acres were not included in the Bell mortgage.

There is no controversy as to the one hundred and twenty acres, which were leased to Knapp, and which embraced the homestead as it existed after 1838 up to June, 1843. And the reference to the purchase of How and Cross in the description does not appear to throw any particular light upon the construction to be given to the description in the mortgage, as it appears by the case that these deeds conveyed other lands than those mentioned in the mortgages, in all about two hundred and seventy-five acres.

The question then is this, are the demanded premises the eighty acres which were mortgaged to the defendants, and which do not form any part of the farm that was leased to Knapp, included in the Bell mortgage? If so, the demandants are entitled to judgment, that mortgage being prior to the defendants', and Cross being at the time of the mortgage owner of the premises.

If the description in the mortgage were simply " all the homestead farm where the said Cross formerly lived, in Piermont," it would be less free from doubt; though even then it might refer to the homestead as occupied prior to 1838, or to that as occupied by Cross subsequently. The homestead farm where Cross formerly *lived*, in Piermont, included about two hundred acres *prior* to 1838, and about one hundred and twenty after that time; but inasmuch as at the time when the mortgage was given, Cross owned the whole two hundred acres, and had once occupied the same, such a description could well enough be held to cover all of the farm as it existed and was occupied prior to 1838. But, when we take into consideration that at the time the mortgage was given the lease to Knapp was in force; that that lease covered the homestead as it existed between 1838 and 1841, and was the homestead on which Cross last resided, in

Piermont; and when we consider the further significant fact that the quantity of land stated in the mortgage as conveyed, is one hundred and twenty acres, being the same quantity as that contained in the lease, we think that the proper construction to be put upon the description in the mortgage is, that the eighty acres are not included in the conveyance, and that they were not intended to be. It was the homestead that was leased to George Knapp, and which contained one hundred and twenty acres, that was mortgaged to Bell, and not the homestead as it existed prior to 1838, and which contained two hundred acres.

Taking the whole description together, " all the homestead farm, leased to George Knapp, &c., containing one hundred and twenty acres," &c., and all the facts stated in the case, we think there can be little doubt that the construction which we have stated is the correct one ; and, according to the provisions of the case, there must be

*Judgment for the defendants.*